## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NEGHASI MIDDLETON, | ) | |
| | ) | |
| | ) | CIVIL ACTION |
| | ) | NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| COBB COUNTY, Georgia; | ) | |
| JAMES CALEB ELLIOTT, | ) | |
| Individually and in his official | ) | |
| capacity as an officer of COBB | ) | |
| COUNTY POLICE DEPARTMENT; | ) | |
| and JOHN R. HOUSER, Individually | ) | |
| and in his capacity as Chief of the | ) | |
| COBB COUNTY POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT WITH JURY DEMAND

Plaintiff Neghasi Middleton respectfully files this Complaint and Demand for Jury Trial against Defendants Cobb County, Georgia; Chief John R. Houser ("Chief Houser"), individually and in his official capacity as Chief of the Cobb County Police Department; and Officer James Caleb Elliott ("Officer Elliott" or "Defendant Elliott"), individually and in his official capacity as a Cobb County police officer. Middleton alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil-rights action brought under 42 U.S.C. § 1983, the United States Constitution, and Georgia law. It is an action for damages and injunctive relief arising from Defendant Elliott's November 6, 2016, wrongful shooting of Plaintiff Middleton—an unarmed juvenile at the time. By using excessive force, Defendant Elliott intentionally violated Plaintiff's civil rights guaranteed by the United States Constitution and the Georgia Constitution.

2.       Defendant Elliott interaction with Middleton was prompted by a call concerning a supposedly "suspicious vehicle" parked on a residential neighborhood street. Defendant Elliott approached the car and demanded the occupants (who were merely socializing) identify themselves. Middleton complied.

3.      Defendant Elliott unjustifiably and suddenly opened fire on Middleton as Middleton fled in fear, and continued to terrorize him with shots as they ran through a subdivision neighborhood. Defendant Elliott inflicted a gunshot wound to the back of Middleton's leg.

4.      Unarmed and terrified by Defendant's barrage of gunfire, Middleton displayed no sign of aggression before or during the shooting. He presented no threat to Defendant Elliott or to anyone else.

5.      Defendant Elliott unlawfully and recklessly fired at least eight shots at Plaintiff from an unsafe distance placing at risk the lives and property of unintended targets. The shots that missed Plaintiff hit houses, street signs, and other objects in the neighborhood. Miraculously, no others were injured.

6.      Middleton's injury was the direct result of customs, policies, and practices of Defendants Cobb County and its named officials. Specifically, those Defendants failed to implement adequate policies and procedures for not using deadly force against non-violent, unarmed juveniles. Defendants also failed to adequately train their officers—including Defendant Elliott—on this subject. And despite notice through previous civilian complaints about Defendant Elliott's conduct—including allegations of racist and/or biased behavior and use of excessive force—Defendants failed to subject Defendant Elliott to sanctions or even additional training to ensure his constitutional compliance. As explained below, Plaintiff was injured because of these policies and practices—and Defendants are all responsible for his injury.

## JURISDICTION AND VENUE

7.      This action is brought under 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments of the United States Constitution, as applied to the State of Georgia and its entities, officials, and employees; and under Georgia statutes and common law.

8.      This Court has jurisdiction over the subject matter of this action under

28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction,

under 28 U.S.C § 1367, over the state-law claims as they are part of the same

case or controversy under Article III of the United States Constitution.

9.      Venue is proper in the Northern District of Georgia, Atlanta Division,

under 28 U.S.C. § 1391.

10.     Defendants' relevant acts occurred in Cobb County, Georgia, which is

in the Northern District of Georgia.

11.     Plaintiff timely submitted the required *ante litem* notice in compliance

with all local and state laws. A copy is attached as Exhibit A.

12.     Plaintiff seeks compensatory damages, punitive damages, interest, and

attorneys' fees and costs under 42 U.S.C. § 1988 due to Defendants'

malicious, intentional, and/or reckless acts. Defendants acted with a callous

disregard for the Plaintiff's rights.

### PARTIES

13.     At the time of Defendants' actions, **Plaintiff Neghasi Middleton**, an

African-American, was a 16-year-old high-school student, and a U.S. citizen

residing in Cobb County, Georgia.

14.     At all relevant times, **Defendant James Caleb Elliott**, was acting as

an employee, officer, agent, and servant of the Cobb County Police

Department in the Northern District of Georgia; and acting under color of state law, that is, under the statutes, ordinances, regulations, customs, and usages of the State of Georgia and the Cobb County Police Department and under authority of their office and within the scope of his police-officer employment. Upon information and belief, he is a U.S. citizen. He is sued in both his individual and official capacities.

15.     **Defendant Cobb County, Georgia**, is a body corporate and politic and a Georgia political subdivision, duly established under its laws and Constitution. Cobb County is a governmental unit responsible under state law for properly maintaining, operating, regulating, and funding Cobb County's Police Department.

16.     At all relevant times, Defendant Cobb County acted through the Cobb County Police Department and various other employees and officials of the Cobb County Police Department and Cobb County. The acts, edicts, and practices of those persons represent the official customs, policies, and practices of Defendant Cobb County. Defendant Cobb County is liable for the policies and practices of the Cobb County Police Department and the officers, including Defendant Elliott.

17.     **Defendant John Houser** was the Cobb County police chief at all relevant times, and is a U.S. citizen residing in the Northern District of

Georgia. As chief, Houser was the County's decisionmaker for law-enforcement policies and procedures, as well as for hiring and disciplinary matters. He was vested with the obligation of ensuring that Cobb County police officers, including Defendant Elliott, complied with the statutes, ordinances, regulations, customs, and usages of the State of Georgia and the Department. Defendant Houser was also responsible for training, hiring, supervising, and disciplining Cobb County agents, employees, and police officers, including Defendant Elliott. He is sued in both his individual and official capacities.

## FACTS

### *Defendant James Elliott used excessive and deadly force against an unarmed minor.*

18.     On the morning of November 6, 2016, four juveniles, including Plaintiff Middleton, were sitting inside a parked car on a residential street. Middleton was in the driver's seat.

19.     At about 9:52 a.m. that day, Defendant Elliott was dispatched to 6289 Allen Road, Mableton, Georgia, regarding a report of a supposedly suspicious vehicle, a PT Cruiser, parked on the street.

20.     Defendant Elliott located the blue PT Cruiser, pulled in front of the car, and exited his patrol vehicle to speak to the occupants. The car contained two juvenile females and two juvenile males.

21.     The occupants, including Plaintiff, responded to Defendant Elliott's questioning and, upon request, wrote their names and dates of birth on a notepad he gave them. Not one of the juvenile occupants were armed or presented any danger to Officer Elliott or anyone else.

22.     After speaking with the juveniles, Officer Elliott walked to the back of the car, obtained the license plate number, and then returned to his patrol car. Defendant Elliott returned to the car with the juveniles, aimed his service weapon at them, began wildly shouting, and commanded them to get out.

23.     Plaintiff Middleton, an unarmed, young African-American male, and in fear for his life because of the reports of killings of black boys by police across America, left the car as instructed. But he fled on foot away from Defendant Elliott as fast as he could, desperate to reach the safety of his nearby home, which he shared with his mother and twin sister.

24.     Without calling for or waiting for backup, Defendant Elliott sprinted after Middleton, leaving the other three juveniles unattended, and—without provocation or any real or perceived threat from Middleton—repeatedly fired

his service weapon at Plaintiff's back as he fled through a residential subdivision, striking homes, street signs and other structures within the neighborhood.

25.     Defendant Elliott's barrage of gunfire placed Middleton in sheer terror for his life. After the first shot, Defendant Elliott fired about seven more shots toward Plaintiff's back, eventually striking Plaintiff in the rear of his leg with the eighth shot.

26.     Defendant Elliott's body camera was turned on as he left his car at 6289 Allen Road, and audio-and-visual footage of the entire incident, including the shooting is available.

27.     When Defendant Elliott shot him, Middleton had given him no indication that he was armed and posed no significant threat of death or serious injury to either Defendant Elliott or the public.

28.     When Defendant Elliott shot him, Middleton had engaged in no illegal or criminal activity justifying Defendant Elliott's use of deadly force; nor did Defendant have probable cause to believe that Middleton had done so.

29.     An internal Cobb County investigation into Defendant Elliott's shooting of Plaintiff Middleton determined that Defendant Elliott violated supposed Cobb County Police Department policies regarding use of force. (As shown below, the custom, policy, and practice was otherwise.) Defendant

Elliott intentionally used excessive and deadly force unreasonably and unconstitutionally.

30.     Defendant Cobb County Police Department written policy relating to the Use of Force (5.22) claims in part:

> The Cobb County Police Department recognizes and respects the value and special integrity of each human life. In vesting the members of this agency with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of this Department that police officers use only that force that is reasonably necessary to bring an incident under control, while protecting the lives of the officer and others.

31.     Defendant Cobb County requires its police officer to know Sections 16-3-24 and 17-4-20 of the Official Code of Georgia Annotated. The Cobb County Public Training Center is responsible for ensuring that all law-enforcement officers receive training, among other things, on these statutes and the lawful use of deadly force.

32.     Upon information and belief, at all relevant times relevant, Defendant Elliott had access to non-deadly force options. Defendant Elliott intentionally chose not to use any of the non-deadly force option available to him.

33.     Defendant Elliott did not follow this Cobb County Police Department written policy.

34.     Defendant Elliott did not follow the known best practices of law enforcement.

35.     Defendant Elliott did not follow standards as specified by the Georgia

Peace Officers Standards and Training (POST).

36.     Defendant Elliott failed to exercise sound judgment in apprehending

Plaintiff Middleton.

37.     Defendant Elliott breached his duty to exhaust all non-deadly force

options before resorting to the use of deadly force.

38.     The amount of force used in subduing Plaintiff Middleton was

excessive, given that Plaintiff was known to be a minor, had committed no

known criminal violations, was known to not be in possession of a weapon,

and was not threatening the life and safety of Defendant Elliott or anyone

else.

39.     As of the date of this filing, no criminal charges have been brought

against Defendant Elliott.

40.     Defendant Elliott resigned from the Cobb County Police Department.

41.     Upon information and belief, as explained below, Cobb County, Cobb

County Police Department and its supervisors, including Chief Houser, have

maintained a system of review of police conduct so untimely and cursory as to

be ineffective and to permit and tolerate the unreasonable excessive and

deadly use of force by police officers.

***Defendant Elliott had a history of complaints for violating the policy
and procedures of the Cobb County Police Department.***

42.      Defendant Cobb County has a record of three complaints filed against

Defendant Elliott, all filed by African-American citizens, during his

employment with Cobb County between September 15, 2014 through his

November 25, 2016 separation date. These prior incidents demonstrate,

among other things, his pattern of willful impulsiveness as a police officer,

failure to properly investigate and a tendency to react without care for the

facts.

43.      On April 23, 2015, Cobb County Police Department received a

complaint against Defendant Elliott alleging violations of the following

policies: (1) Use of Force; and (2) Performance of Duty. A Cobb County female

business owner alleged that Elliott was "too aggressive," unjustified in

"putting his hands on her," and screamed at her with "a crazed look in his

eyes," when she sought to assist her husband.

44.      On March 23, 2016, Cobb County Police received a complaint against

Defendant Elliott alleging violations of the following Cobb County policies: (1)

Performance of Duty; (2) Courtesy; and (3) Rules regarding Biased Based

Profiling. A male citizen and TSA Agent complained that Officer Elliott

refused to conduct a proper accident investigation, ignored the facts and demonstrated racial bias against him as an African-American.

45.     On October 1, 2016, Cobb County Police received a complaint against Defendant Elliott alleging violations of the following Cobb County policies: (1) Use of Force, (2) Performance of Duty, and (3) Department Reports. A female citizen, and employee of a Superior Court Judge, alleged that Officer Elliott used excessive force against her when he approached the open door of her home with his gun drawn and pointed at her chest, without justification, because he mistakenly went to the incorrect address on a call.

46.     The Cobb County Police Department Internal Affairs division conducted cursory investigations of each civilian complaint and concluded that each accusation was unfounded and exonerated Defendant Elliott.

47.     That was wrong.

48.     Despite similarities between the complaints, and their increasing frequency, Internal Affairs recommended no sanctions against Defendant Elliott; nor did it recommend additional training to address documented complaints and concerns regarding Defendant Elliott's use of excessive force and poor performance.

49.     The acts, omissions, systemic flaws, policies, and customs of Defendant Cobb County, and its employees and supervisors, including Chief Houser,

caused police officers of Cobb County, including Defendant Elliott, to believe that excessive, deadly, and unreasonable use of force would not be aggressively or properly investigated, with the foreseeable result that officers were more likely to use excessive or unreasonable force against Plaintiff Middleton and others in the future.

50.    Chief Houser was aware of the nature of prior complaints and allegations against Defendant Elliott. Chief Houser failed to address those issues with additional training as to ensure compliance with Cobb County's policies, the United States Constitution, and Georgia law.

51.    At the time of the unjustified shooting of Plaintiff, Defendant Cobb County's Police Department Policy 5.22 on the Use of Force, effective on December 15, 2013, was supposedly the official policy of the department. But the real policies, practices, and customs were otherwise.

52.    Defendant Cobb County's Police Department Policy 5.22 claims to accord with both the laws of the State of Georgia, and the Supreme Court of the United States' decision in *Tennessee v. Garner*, 471 U.S. 1 (1985).

53.    Cobb County's training of its police officers on the use of force differs from that which is stated in its official policy.

54.     Cobb County's police department has no written policy stating the

effective range by which its officers may safely discharge their service

weapons at a target.

55.     Chief Houser and Cobb County also failed to train police officers on the

proper standards and procedures for the detention of minor citizens and the

use of deadly force against minors. This failure to train is in deliberate

indifference to the rights of citizens, such as Plaintiff Middleton.

### Cobb County's police department has a history of discriminatory police practices.

56.     Cobb County's police department has shown a pattern of discriminatory

behavior and biased policing towards African-Americans.

57.     On or about July 10, 2016, Lieutenant Greg Abbott ("Lt. Abbott") of the

Cobb County Police Department made an alleged DUI traffic stop in

Interstate 74 in Cobb County, Georgia.

58.     During the DUI traffic stop, Lt. Abbot stated to the white passenger of

the stopped vehicle, who expressed fear of being shot by police, "[B]ut you're

not black. Remember we only kill black people." This traffic stop was

recorded by the dash cam mounted in Lt. Abbott's patrol vehicle. Lt. Abbot's

candid admission about what "we" do was a statement about the custom,

policy, and practice of and attitudes in the Cobb County Police Department.

59.    In 2016, Defendant Cobb County commissioned a comprehensive report

from the International Association of Chiefs of Police ("IACP"). The report

evaluated the policies, procedures and practices of the Cobb County Police

Department. The report was titled "Police Operations and Management

Study, a Study by the International Association of Chiefs of Police" ("IACP

Report").

60.    The IACP Report urged Defendant Cobb County and the Cobb County

Police Department to address the Cobb County community's "perception of

discriminatory and bias policing" by the Cobb County Police Department.

61.    The IACP Report made various recommendations to Defendant Cobb

County and the Cobb County's police department. The IACP Report made a

"priority 1" recommendation that Defendant Cobb County Police Department

"[A]cknowledge and Address Public Perceptions of Racism and

Discriminatory Policing by the Cobb County Police Department."

62.    The IACP Report specifically stated:

"Cobb County Police Department leadership must recognize that the root

cause of the strained relationships and lack of public trust with some members

of the community, is the result of public perceptions of racism on the part of

police officers and the agency as a whole. Cobb County Police Department

leadership must develop a strategy to correct that perception, identify current

practices that feed this perception, and immediately modify/eliminate those practices."

63.     The IACP Report provided a diversity profile of the Cobb County Police Department ("CCPD"). At the time of the Report the CCPD had a total of 641 sworn law-enforcement personnel. Of the 641 personnel, only 14 African-Americans had a rank of sergeant or higher, compared with 122 White personnel with that rank.

64.     The IACP Report's diversity profile indicated that of 641 personnel, a total of 87 were African American.

65.     On or about August 29, 2017, newly appointed Chief of Police Michael Register of Cobb County's police department stated in an interview with the Atlanta Journal Constitution ("AJC") that Defendant Elliott's bodycam footage was used to implement changes in the department's use-of-force and firearms training.

66.     On or about August 29, 2017, Chief Michael Register also told the *Atlanta Journal Constitution* regarding Defendant Elliott's shooting of Plaintiff, "[t]he changes in training were made to address some of the issues associated with this incident which will assist officers in the future to make better decisions when faced with similar situations."

67.     Defendants and their agents and employees, including but not limited to Defendant Elliott, acted intentionally, willfully and wantonly toward Plaintiff Middleton, with their actions, omissions, and policies proximately causing his injury in violation of his clearly established constitutional rights.

68.     Defendants have exhibited a pattern and practice of ignoring and violating the rights of Georgia residents, including Plaintiff, which proximately caused the injury to Plaintiff, and further, negligently and recklessly supervised and failed to adequately train their employees, despite knowledge of the need to do so.

## CLAIMS
### Claim 1
#### FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ELLIOTT

69.     Plaintiff re-alleges the previous allegations.

70.     The force used against Plaintiff by Defendant Elliott was unreasonable and excessive.

71.     Plaintiff had a right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the use of excessive and unreasonable force in the course of an arrest, even a lawful arrest.

72.     Defendant Elliott unreasonably used deadly force against Plaintiff by aiming a weapon at him and by discharging said weapon repeatedly,

eventually shooting the Plaintiff, when he was an unarmed juvenile and not an imminent threat to Defendant Elliott or anyone else.

73.     Plaintiff was placed in imminent fear of his life and suffered severe pain and injury as the result of Defendant Elliott's actions when a bullet fired from his weapon struck Plaintiff.

74.     Plaintiff's right to be free from unreasonable and excessive force was clearly established by state and federal law at the time of the events giving rise to this Complaint.

75.     A reasonable law-enforcement officer would have known that Defendant Elliott's conduct would violate Plaintiff's rights to be free from unreasonable and excessive force.

76.     Defendant Elliott acted under color of law and under official policy, customs, and/or usage as an employee and agent of Cobb County, Georgia and the Cobb County Police Department.

77.     Defendant Elliott subjected Plaintiff to the deprivation of rights and privileges secured to him by the United States Constitution including the constitutional rights to not be deprived of his liberty, due process of law, and to be free from the use of excessive and illegal force against his person under the Fourth and Fourteenth Amendments to the United States Constitution.

78.     Defendant Elliott acted under color of law with malice, deliberate

indifference, and/or recklessness, and with callous and gross disregard to

Plaintiff Middleton's rights.

79.     Plaintiff claims damages for the injuries caused by Defendant Officer

Elliott as allowed under federal and state law.

80.     As a direct and proximate result of the reckless, willful, wanton,

malicious and/or unlawful conduct of Defendant Elliott, Plaintiff will

continue to suffer economic and non-economic damages for which this

Defendant is liable, including, but not limited to, mental, emotional, and

physical pain and suffering.

81.     Plaintiff demands compensatory and punitive damages against

Defendant Elliott, in his individual and official capacity, Defendant is also

liable for attorney's fees, costs, witness fees, and any additional legal or

equitable relief that this Court deems appropriate. Plaintiff demands a trial

by jury on all issues.

## Claim 2

### FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT COBB COUNTY

82.     Plaintiff re-alleges the previous allegations.

83.     Cobb County was responsible for operating the Cobb County Police

Department, for appointing the Cobb County Chief of Police, and for adopting

and implementing rules and regulations for Cobb County and its police

department's employees.

84.     Cobb County was responsible for implementing the rules, regulations,

policies, and procedures regarding training, screening, hiring, supervising,

controlling, disciplining, assigning, and terminating police officers.

85.     Cobb County knew, or through the diligent exercise their duties and

use of reasonable care, should have known, that the policies and procedures

of its police department, including its screening, hiring, training, supervision,

disciplinary process, processes for work assignments, and termination

process for its officers were severely deficient as evident by civilian

complaints made, including complaints of excessive use of force and biased

policing constituting violations of constitutional rights by police officers.

86.     Cobb County knew, or had they diligently exercised their official duties

and used reasonable care, should have known, that the use of excessive force,

and racially biased policing by its police officers, was both a prevalent and

pervasive problem within its police department.

87.     Cobb County was deliberately indifferent in that they either expressly

or impliedly acknowledged and assented to the failure to train, supervise,

control, discipline, or otherwise screen its police-department employees, including, but not limited to, Defendant Elliott, for dangerous propensities, lack of training or skill, or other characteristics making officers unfit for duty.

88.     Cobb County was deliberately indifferent to the public's rights, in that they failed to determine whether police officers, including Defendant Elliott, posed a threat to the public as a result of his propensity to use illegal and excessive force.

89.     Cobb County, through its deliberate indifference, failed to ensure that its police officers did not violate citizens' constitutional and statutory rights, including those of Plaintiff Middleton, while Cobb County Officers were acting under color of state law for Cobb County.

90.     Cobb County acted with deliberate indifference and reckless, wanton and/or callous disregard for the rights of persons, including Plaintiff Middleton, who might be assaulted, injured, battered, or killed by police who had been inadequately trained, supervised, and/or disciplined.

91.     Despite the notice and knowledge Cobb County had as to the dangerous propensities of the Cobb County Police Officers, specifically Defendant Elliott, Cobb County failed to implement any policies, procedures, or programs to properly train or discipline officers, including Defendant Elliott, or otherwise intentionally failed to protect the public, including Plaintiff Middleton.

92.     Cobb County was deliberately indifferent to the selection, training, supervision, control, discipline, or retention of Cobb County Police Officers, including Defendant Elliott, as an officer of Cobb County in that, among other things:

(a)    They appointed Defendant Elliott as a police officer when they knew or should have known, had they diligently exercised their official duties and used reasonable care, and not acted recklessly, about Defendant Elliott's disposition to disregard basic principles of safe and effective policing in the community, and to engage in unlawful conduct under policies, customs, practices, and usages;

(b)    They failed to act despite the fact that they knew, or should have known had they diligently exercised their official duties and used reasonable care, and not acted recklessly, that this pattern of conduct under customs, policies, and practices was being carried out by Cobb County police officers, including Defendant Elliott, with deliberate indifference, malice, and reckless disregard to the rights of Plaintiff Middleton. And Cobb County failed and refused to:

1.    Remove Defendant Elliott from his position as a police officer;

2.    Take any meaningful disciplinary action against police officers, including Defendant Elliott, for prior complaints;

3.  Take steps to properly train police officers, including Defendant Elliott, to address deficiencies in training that they had notice of as a result of prior complaints and from other sources of information; and

4.  Implement proper policies and procedures to provide redress for citizens such as Plaintiff Middleton, who were injured as a result of the inadequate training and supervision on behalf of Cobb County, as evidenced by the pattern of similar complaints against Defendant Elliott, the failure to sanction or train Defendant Elliott as a result of those complaints, and the eventual violation of Plaintiff Middleton's rights by Defendant Elliott.

93. The deliberate indifference of Cobb County violated the constitutional rights of all persons, including Plaintiff Middleton.

94. Plaintiff Middleton's injuries were caused by Cobb County's described acts, omissions, policies, customs, and practices.

95. As a direct and proximate result of Defendants' reckless, willful, wanton, malicious and unlawful conduct, Plaintiff will continue to suffer economic and non-economic damages for which these Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering.

96.     Plaintiff demands compensatory against Cobb County, in its official

capacity, Defendant is also liable for attorney's fees, costs, witness fees, and

any additional legal or equitable relief that this Court deems appropriate.

### Claim 3
### FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT CHIEF HOUSER IN HIS OFFICIAL AND PERSONAL CAPACITIES FOR DELIBERATE INDIFFERENCE / FAILURE TO TRAIN POLICE OFFICERS ON EXCESSIVE AND DEADLY FORCE

97.     Plaintiff re-alleges the previous allegations.

98.     Defendant Chief Houser was responsible for the day-to-day operation of

the Cobb County Police Department, and for adopting and implementing

rules and regulations for its officers.

99.     Defendant Houser was responsible for promulgating the rules,

regulations, policies, and procedures regarding hiring, screening, training,

supervising, controlling, disciplining, assigning, and terminating police

officers.

100.    Defendant Houser knew, or should have known as a result of

reasonable care and exercise of official duty, that the policies, procedures,

customs and or/usage of the Cobb County Police Department were severely

deficient as based upon the number and nature of complaints regarding the

Cobb County Police department, in particular complaints of use of excessive

force, which constitutes violations of constitutional rights on behalf of its

police officers.

101.    Defendant Houser knew, or had he diligently exercised reasonable care,

should have known, that the problem with use of excessive force that

constituted violations of constitutional rights by Cobb County police officers

was a prevalent and pervasive problem existing in his police department.

102.    Defendant Houser was deliberately indifferent in that he either

expressly or impliedly acknowledged and assented to the failure to train,

supervise, control, discipline, or otherwise screen employees of Cobb County

Police Department, including, but not limited to, Defendant Elliott, for

dangerous propensities, lack of training or skill, or other characteristics

making said officer unfit to perform his duties.

103.    Defendant Houser was deliberately indifferent to the rights of the

public, including Plaintiff Middleton, in that he failed to determine whether

Cobb County police officers, including Defendant Elliott, posed a threat to the

public as a result of the propensity to use illegal and excessive force.

104.    Defendant Houser, through his deliberate indifference, failed to ensure

that Cobb County police officers did not violate the constitutional and

statutory rights of its citizens, including those of Plaintiff Middleton, while

Cobb County Officers were acting under color of state law.

105.    Defendant Houser acted with deliberate indifference and reckless and/or callous disregard for the rights of persons, especially juveniles, including Plaintiff Middleton, who might be assaulted, injured, battered, or killed by Cobb County police officers who had been inadequately trained, supervised, or disciplined.

106.    Despite the notice and knowledge of Defendant Houser had as to the dangerous propensities of Cobb County police officers, specifically Defendant Elliott, Chief Houser failed to implement any policies, procedures, or programs to properly train or discipline officers, including Defendant Elliott in the appropriate use of force against juveniles, or otherwise intentionally failed to protect the public, including Plaintiff Middleton.

107.    Defendant Houser was deliberately indifferent to the selection, training, supervision, control, discipline, or retention of Cobb County Police Officers, including Defendant Officer Elliott, as an officer of Cobb County in that, *inter alia*:

(a)    He appointed and retained Defendant Elliott as a police officer when he knew or should have known, had he diligently exercised his official duties and used reasonable care, and not been reckless, of Elliott's disposition to engage in unlawful conduct under official policies, customs, practices, and usages;

(b) He failed to act despite the fact that he knew, or should have known had he diligently exercised his official duties and used reasonable care, and not been reckless, that Cobb County police officers, including Defendant Elliott, were carrying out this pattern of conduct under policies, customs, and practices, with deliberate indifference, malice, and reckless disregard to Plaintiff's rights. And Houser failed and refused to:

1. Remove Defendant Elliott from his position as a police officer;

2. Take any meaningful disciplinary action against police officers, including Defendant Elliott, for prior complaints;

3. Take steps to properly train police officers or to address deficiencies in training that he had notice of as a result of prior complaints, including Defendant Elliott;

4. Take steps to train all police officers, including Defendant Elliott, in regard to the use of force against juveniles.

5. Implement proper policies and procedures to provide redress for citizens such as Plaintiff Middleton, who was injured as a result of the inadequate training and supervision on behalf of Chief Houser, as evidenced by the pattern of similar complaints against Defendant Elliott, the failure to sanction or train Defendant

Elliott as a result of those complaints, and the eventual violation of Plaintiff Middleton's rights on behalf of Defendant Elliott.

108.    Defendant Houser's deliberate indifference violated the constitutional rights of all persons, including Plaintiff Middleton.

109.    Middleton's injuries were caused by Defendant Houser's previously described acts, omissions, policies, practices, and customs.

110.    By permitting, tolerating, and sanctioning a persistent and widespread policy, practice and custom under which Plaintiff was shot, Defendant Houser deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, the right to interact with police officers without a deliberate indifference to Plaintiff Middleton's age and use of force.

111.    As a direct and proximate result of Defendant Houser's reckless, willful, wanton, malicious and unlawful conduct, Plaintiff will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering.

112.    Plaintiff demands compensatory and punitive damages against Chief Houser, in his individual and official capacity. Chief Houser is also liable for

attorney's fees, costs, witness fees, and any additional legal or equitable relief the Court deems appropriate.

## Claim 5

### ASSAULT (AGAINST DEFENDANT ELLIOTT)

113.    Plaintiff re-alleges the previous allegations.

114.    Defendant Elliott's unlawful shooting of Plaintiff was intentional, egregious, and unprovoked. Defendant Elliott was acting in his capacity as a police officer, and within the scope of his employment when he committed assault upon the Plaintiff.

115.    An ordinary person in Plaintiff's position, as a young, unarmed, African-American male, that had been stopped by a Cobb County police officer who, shortly upon returning to his patrol vehicle, leapt from said vehicle, shouting and drawing his weapon, would reasonably fear that he or she would suffer a violent, harmful, or offensive touching by Defendant Elliott.

116.    Before being unlawfully shot by Defendant Elliott, Plaintiff had a reasonable apprehension that he would immediately suffer a violent injury from Defendant Elliott.

117.    Plaintiff's reasonable fear that Defendant Elliott would cause him

violent injury constituted a reasonable apprehension of violent injury that

amounts to common law assault.

118.    Defendant Elliott's assault on Plaintiff was unnecessary and

unwarranted in the performance of his duties and constituted an

unreasonable and excessive use of force.

119.    As a direct and proximate result of Defendant Elliott's reckless, willful,

wanton, malicious, and unlawful conduct, Plaintiff will continue to suffer

economic and non-economic damages including, but not limited to, mental,

emotional, and physical pain and suffering.

120.    Plaintiff demands compensatory and punitive damages against

Defendant Elliott. Defendant is also liable for attorney's fees, costs, witness

fees, and any additional legal or equitable relief that this Court deems

appropriate.

## Claim 6

### BATTERY (AGAINST DEFENDANT ELLIOTT)

121.    Plaintiff re-alleges the previous allegations.

122.    Defendant Elliott's unlawful shooting of Plaintiff, a fleeing, unarmed

teenager, was intentional, egregious, and without consent or provocation.

Defendant Elliott was acting in his capacity as a police officer, and within the scope of his employment when he committed battery upon the Plaintiff.

123.    Defendant Elliott's intentional, egregious, and unconstitutional shooting of Plaintiff **caused substantial physical harm and visible bodily harm to Plaintiff.** The intentional action of shooting Plaintiff amounts to battery by Defendant Elliott.

124.    Defendant Elliott's battery on Plaintiff was unnecessary and unwarranted in the performance of his duties and constituted an unreasonable and excessive use of force.

125.    As a direct and proximate result of the reckless, willful, wanton, malicious and unlawful conduct of Defendant Elliott, Plaintiff will continue to suffer economic and non-economic damages, including, but not limited to, mental, emotional, and physical pain and suffering.

126.    Plaintiff demands compensatory and punitive damages against Defendant Elliott. Defendant is also liable for attorney's fees, costs, witness fees, and any additional legal or equitable relief that this Court deems appropriate.

## Claim 7

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST DEFENDANT ELLIOTT)

127.    Plaintiff re-alleges the previous allegations.

128.    Defendant Elliott's unlawful use of force against Plaintiff was
outrageous, intentional, egregious and without consent or provocation.
Defendant Elliott was acting in his capacity as a police officer, and within the
scope of his employment when he shot Plaintiff.

129.    Defendant Elliott's shooting of Plaintiff was extreme and outrageous
and was unnecessary and unwarranted in the performance of his duties and
constituted an unreasonable and excessive use of force.

130.    As a direct result of Defendant Elliott's unlawful and unconstitutional
use of force, Plaintiff suffered grievous bodily harm.

131.    Plaintiff suffered emotional distress because of Defendant Elliott's
unquestionably severe actions. Defendant Elliott's unlawful shooting of
Middleton was the actual and proximate cause of Plaintiff's emotional
distress. Following Defendant Elliott's outrageous and unconstitutional
shooting of Plaintiff, Plaintiff was conscious and suffered greatly as he bled
from the gunshot wound to his leg.

132.    As a direct and proximate result of the outrageous, reckless, willful,
wanton, malicious and unlawful conduct of Defendant Elliott, Plaintiff will
continue to suffer economic and non-economic damages for which the
Defendant is liable, including, but not limited to, mental, emotional, and

physical pain and suffering. Defendant Elliott is liable to Plaintiff for the tort of intentional infliction of emotional distress.

133.     Plaintiff demands compensatory and punitive damages against Defendant Elliott. Defendant is also liable for attorney's fees, costs, witness fees, and any additional legal or equitable relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff respectfully demands a jury trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the following relief from this Court:

(a)     Declare that Defendants' acts and conduct constitute violations of the Fourth and Fourteenth Amendments to the United States Constitution, as well as of 42 U.S.C. § 1983;

(b)     Enter judgment in favor of Plaintiff on all claims of relief;

(c)     Grant compensatory damages to Plaintiff in the amount to be determined at trial;

(d)     Grant punitive and exemplary damages to Plaintiff in the amount to be determined at trial;

(e)     Award Plaintiff all costs of this action and reasonable attorneys'

fees under 42 U.S.C. § 1988, and applicable federal and state law;

(f)     Award pre- and post-judgement interest at the highest lawful rate;

(g)     Grant all other relief in law or equity, which this Court deems

equitable, just, and proper, and within the Court's jurisdiction.

Respectfully submitted this 5th day of November, 2018,

*/s/ Tanya Miller*
Tanya F. Miller (GA Bar No. 508434)
Dubose Miller
75 14th NE, Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
Fax: 404-921-9557
miller@dubosemiller.com

*[Per consent and pending pro hac vice
motions to be filed]*
Subodh Chandra (OH Bar No.
0069233)
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
Telephone: 216.578.1700
Fax: 216.578.1800
Subodh.Chandra@ChandraLaw.com

*Attorneys for Plaintiff Neghasi Middleton*